## Underwood v. Overstreet.

(Decided June 18, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Division No. 4).

Attorney and Client—Creation of Special Partnership—Fees.— Where one attorney invites another to assist him in the preparation and trial of a named case and the two practice the case to-together, a special partnership or partnership for a special purpose is created, and in the absence of any agreement to the contrary each lawyer is entitled to receive one-half of the fee realized even though one of the attorneys does more of the work than the other.

A. SCOTT BULLITT for appellant.

BURWELL K. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellant and defendant below, Elmer C. Underwood, at the time of the commencement of this action

and for some years previous thereto, was a skilled and successful lawyer at the Louisville bar who enjoyed a wide and favorable reputation and lucrative practice. Underwood has died since the commencement of this action. Beckham Overstreet is a younger lawyer of good reputation and professional standing. When beginning to practice Overstreet frequently sought the advice and aid of Underwood in the preparation and trial of cases in which he was employed, and Underwood lent his aid and assistance to Overstreet on many occasions in the preparation and trial of suits in which Overstreet alone was interested, and in other actions in which Overstreet had induced his clients to engage Underwood to assist in a professional way, and in cases in which Overstreet himself had engaged Underwood to help perform the services which Overstreet had agreed with his clients to perform. There was no general partnership agreement between the two lawyers but they were frequently associated in cases in most if not all of which the employment was obtained by Overstreet. When the fees were collected in such cases a division was made satisfactory to the two.

In July, 1915, Mrs. Emma Nall employed Beckham Overstreet as attorney to represent her in an action for damages for personal injury against John H. Fleck and the Louisville Gas and Electric Company. It was an important case and Overstreet said to Underwood in substance, "I want you to help me in this case," and the two obtained the consent of Mrs. Nall for Underwood to assist Overstreet in the preparation and trial of the case. About the same time Underwood prepared a writing to be signed by Mrs. Nall and her husband who was her regularly constituted representative, employing the two lawyers. The writing thus prepared and signed reads as follows:

"Louisville, Ky., October 9, 1915.

"Mr. Beckham Overstreet, and
Mr. Elmer C. Underwood,
        Attorneys at Law,
            Louisville, Ky.

"Gentlemen:

We hereby employ you to represent us in collecting our claim for damages against John H. Fleck and Louisville Gas & Electric Company, because of injuries

sustained by Mrs. Emma Nall, on July 21, 1915, at the residence, Twenty-fourth and Walnut streets, and caused by the negligence of said Fleck and said Louisville Gas & Electric Company.

"For your services, we agree to pay you an amount equal to forty per cent if said matters are settled before trial but if a trial is had then your fee shall be an amount equal to fifty per cent.

"Very truly yours,

"MRS. EMMA NALL,

JAMES NALL."

As will be observed the two lawyers were to receive a sum equal to fifty per cent of the amount recovered by Mrs. Nall of the defendants, Fleck and the Louisville Gas & Electric Co., in the event a trial was had. Within a few days after the execution of the writing above copied, a common law action was instituted in the Jefferson circuit court in the name of Mrs. Emma Nall as plaintiff, against John H. Fleck and the Louisville Gas & Electric Company to recover damages, and this suit, after pending for some time, was brought to trial resulting in a verdict and judgment for Mrs. Nall. When it was paid off by the gas company the total sum was $9,441.10. The check was made payable to "Beckham Overstreet and Elmer C. Underwood, attorneys for Emma Nall," and delivered to Underwood who in the absence of Overstreet indorsed the names of Underwood and Overstreet on the check and collected the money. From this sum he paid Mrs. Nall her part and retained for attorney fees $4,559.44. When Overstreet returned to the city Underwood sought him out and told him of the collection of the money, the payment to Mrs. Nall, the expenses incurred and the total amount received by him from the case, and tendered and offered to pay to Overstreet the sum of $1,000.00 as his share of the fee, retaining for himself the sum of $3,559.44. Overstreet declined to accept the $1,000.00 in satisfaction of his part of the fee and after a demand for $2,279.72, which was one-half of the $4,559.44 collected by Underwood on the fee, and the refusal of Underwood to pay said sum, Overstreet instituted this action against Underwood to recover $2,279.72 with six per cent interest from its payment, as his one-half interest in the fee. In his petition Overstreet avers that he and Underwood were operating under a special partnership

in the preparation and trial of the Nall case, and that each was entitled to receive one-half of the fee recovered.

After a motion to strike certain parts of the petition and other motions of a preliminary nature were made and acted upon by the court, Underwood filed a general demurrer to the petition which was overruled; thereupon Underwood filed answer in which he traversed in part the allegations of the petition and in a second paragraph pleaded that there was no partnership either by express agreement or implication between him and the plaintiff Overstreet, but that the plaintiff Overstreet had engaged defendant to assist him in the preparation and trial of the Nall case with the agreement and understanding that the fee of defendant Underwood should be in proportion to the amount of services performed and not to be regulated by the amount of the fee received by the plaintiff; that it might be either greater or less than one-half of the entire fee which Overstreet might obtain from his client, Mrs. Nall; that by a course of dealing between the plaintiff and defendant extending through several years in the practice of law, the defendant Underwood had in the division of fees between him and the plaintiff Overstreet received fees in proportion to the amount and nature of services performed by him in each case and had not been limited to one-half of the fee received by the plaintiff Overstreet. To this answer the plaintiff filed a general demurrer which was sustained with leave to amend. Underwood amended his answer and again a demurrer was sustained to the answer as amended, and he amended again and again, but each time the court sustained the demurrer to the answer. In sustaining the demurrer to the answer and to the answer as amended in the several instances the learned judge delivered written opinions. The final amendment of the answer avers in substance the facts above recited, and further avers that there was no express agreement between the plaintiff and defendant as to the amount of compensation which Underwood was to receive for professional services in the Nall case, but that the defendant Underwood understood from the acts and conversation of the plaintiff Overstreet that the fee of Underwood should be in proportion to the amount and nature of the services performed. In other words, *quantum meruit;* that on one occasion after the bring-

ing of the Nall suit and at the time when plaintiff and defendant were settling other fees between them defendant Underwood had remarked to plaintiff Overstreet that in all future matters he would expect not less than seventy-five per cent of the fees received in cases in which he did the major part of the work, but that the plaintiff Overstreet made no response to the statement. The demurrer to the answer as thus amended was sustained by the learned trial judge for the reason that there was no sufficient averment of either an implied or express agreement on the part of Overstreet to pay Underwood for professional services in the Nall case except that which was created when he invited Underwood to assist him in the case, which invitation created a special partnership between the attorneys for the prosecution of that particular case, and being partners, nothing to the contrary appearing, each was entitled to receive one-half of the fee collected. In its opinion the trial court said:

"The court pointed out in its former opinion that the relation between these two attorneys under the facts shown by the record, constituted a special partnership, limited to the particular transactions referred to. The court is convinced that this is clearly the law, not only in this state, but throughout the states generally. . . ."

Then, after reviewing the proceeding in the instant case, the court continued:

"Pursuant to this order, the defendant filed an amended answer on December 18, 1918, practically repeating the allegations last above referred to, adding thereto the allegation that 'Defendant does not now recall distinctly whether plaintiff expressly acquiesced in said statement by making an express reply at the time or not,' but nevertheless alleging acquiescence by the result of the settlements made in other cases during that time. The court held that this answer did not set up any express contract between the parties concerning the division of such fee, and the court may now add that it is clearly of the opinion that it did not set up any implied contract concerning said proportion of the division of the fee between the parties. As stated by the court in its opinion herein of January 4, 1919, the alleged statement which defendant says he made to plaintiff in reference to his view concerning the proportion in which fees between them should be di-

vided, amounts to a mere expression of an opinion of the defendant as to his legal rights or as to his deserts. If a contract was formed in the manner thus alleged by the defendant, then it must be considered a contract formed by an offer on the part of the defendant, Underwood, and an acceptance on the part of the plaintiff, Overstreet. The court is clearly of the opinion that the alleged statement of Underwood, set forth in his answer as amended, can not be considered as an offer, as that term is used in the law of contracts.  .  .  .

"It is unnecessary for the court here to reiterate the court's discussion set forth in its former opinion herein concerning the impossibility of drawing a deduction from a settlement between two attorneys in one case or in a series of other cases or an implied agreement which would be applicable to the division of fees in subsequent cases. The court is clearly of the opinion that the act or acts of Overstreet in agreeing to the settlements in other cases cannot be construed as an acceptance of said alleged offer of Underwood so as to bind him in this particular case involved in the suit at bar. As pointed out by the court in its former opinion, to hold that such an act on the part of Overstreet constituted an acceptance binding upon him in the case at bar, would be to leave out of consideration entirely all of the circumstances and conditions which might have influenced Overstreet to accept a certain division of fees in those other cases which would have absolutely no bearing upon the facts in question in this suit.  .  .  .

"The court, therefore, concludes that under the pleadings as they stand, judgment must be entered herein, adjudging to the plaintiff an equal proportion of said fee, and further adjudging that so much of the defendant's answer herein as seeks to recover more than fifty per cent of said fee be dismissed, and that the plaintiff be given judgment for said fifty per cent of said fee."

It is a well established principle of the law of partnerships that where the contract is silent as to the amount of compensation or profits each partner shall receive from the business, it shall be equal.

"The profits of a partnership are to be divided equally between the partners, however unequal may be their contributions of capital or of services, in the absence of an agreement, express or implied, to the contrary, unless some fact or circumstance exists, from

which it may be inferred that the partners intended that the profits should be divided in unequal proportions.'' 30 Cyc. 451.

Where attorneys jointly undertake to represent a client for a given fee or for a sum equal to a given per cent of the amount of the plaintiff's recovery, with no agreement between themselves as to the amount each shall receive in the division of the fee, each lawyer takes half. Such arrangement is a special partnership or a partnership for a special purpose. The Supreme Court of United States in the case of Consaul, Admr. of Moyer v. Commins, Admr., 222 U. S. 262, said:

''In this accounting of the affairs of a special partnership between attorneys at law, the survivor claims compensation for services rendered after the dissolution of the firm. Claims of this sort are not favored. They lead to efforts to prove a disparity between the parties, when the law implies equality. They necessitate a balancing of the value of the work of each in securing the business and earning the profits as well as a comparison of the time they may spend on the matters under consideration. Each partner is bound to devote himself to the firm's business, and there is no implied obligation, that for performing this duty, he should be paid more than his proportionate share of the gains. Neglect of one to do his part may be of such character as to justify a dissolution, but as long as the firm continues, there is usually no deduction because one partner has not been as active as the other.

''The same is true where death prevents either of the partners from performing his contract.''

In the case of Averitt v. Russell, 22 Ky. Rep. 755, where there was a controversy between attorneys over the division of the fee, much as in this case, we held that the fact that one attorney did most of the work did not entitle him to a larger proportion of the fee, saying: ''Nor is it important to inquire whether the services of appellant or of Russell were the more valuable in obtaining the judgment in the case of Holt v. Miller. That is not the way lawyers divide fees. Upon an agreement to divide fees equally in a case in which two lawyers are employed, or where a firm of two equal partners is employed to render services, it almost invariably happens that one of the counsel renders greater or more valuable service than the other, but it is not customary

nor should it be to inquire into that question when the fee comes to be divided.''

The general rule with respect to the division of profits between partners is stated in the case of Johnson v. Jackson, 130 Ky. 755:

''The law of partnership is well settled that where the question is one of the division of profits, the presumption is that the profits are to be divided equally. 22 Am. & Eng. Ency. of Law (2nd Ed.) 101; Lee v. Lashbrooke, 8 Dana 215; Honore v. Colmesnil, 1 J. J. Mar. 506. Furthermore, such equality will be presumed, notwithstanding the fact that the contributors to the firm capital are not equal, and whether the partners are or are not on a par in regard to skill, connection, or character, or whether they have or have not labored equally for the benefit of the partnership. Taylor v. Coffing, 18 Ill. 422.''

As said by the learned circuit judge in the opinion quoted, in the absence of anything to the contrary a partnership between two persons entitles each to one-half of the profits or income, after the payment of the obligations of the partnership. When two persons enter into an arrangement to carry on a particular business without an express agreement as to how the profits or income shall be divided, the law supplies the deficiency in the contract by awarding to each partner one-half of the profits or income from the business. As between partners the fact that one does more work than the other in the conduct of the partnership business, or in any special undertaking which the partnership is promoting, does not entitle that partner to a greater share of the profits of the business. A partnership is supposed to be balanced so that one partner, at least in the judgment of all its members, unless specially otherwise provided in the contract, is equal in industry, talents and business acumen to the other partner or partners, and the service of one in the partnership business is equivalent to the services of the other. It follows, therefore, that if Overstreet and Underwood were partners in the practice of the Nall case they were each entitled to one-half of the fees realized, because there was no express agreement as shown by the answer as to how the fee should be divided.

The original answer perhaps presented a good defense to the cause of action stated in the

petition, because it alleged that "it was understood and agreed between plaintiff and defendant" that the fee of Underwood should be commensurate with the service performed and not limited to one-half of that received from the client, and when the defendant was required to amend his answer he set forth facts which made it certain that there was in fact no specific agreement between the parties with reference to the fee and its division. The answer thus amended was subject to demurrer and the court did not err in sustaining the general demurrer of the plaintiff thereto, nor in entering a judgment for the plaintiff, when the defendant declined to plead further, awarding the plaintiff one-half of the fee realized in the Nall case.

Judgment affirmed.