Helena H. HODGDON, Administratrix of the Estate of Genevieve H. James

v.

Stephen H. FULLER, Jr.

v.

Lona M. HEWITT.

ROYAL INDEMNITY COMPANY

v.

Helena H. HODGDON, Administratrix of the Estate of Genevieve H. James and Lona M. Hewitt.

Supreme Judicial Court of Maine.

Oct. 20, 1978.

**62**

Nadeau Professional Offices by Gary H. Reiner (orally), James P. Nadeau, Portsmouth, N. H., for plaintiff.

Robinson, Hunt & Kriger by M. Roberts Hunt, Portland (orally), Stephen J. Staples, Bolinas, Cal., for Stephen H. Fuller, Jr.

George S. Hutchins, Jr., York, for Lona M. Hewitt.

James Koromilas, Dover, N. H., for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

This is an appeal from the dismissal with prejudice of four related complaints and the denial of plaintiff's motion for Rule 60(b)(1) and (6), M.R.Civ.P., relief. Due to the complex, and at times confusing, nature of the litigation forming the basis of this appeal, we find it necessary to set forth in detail the factual and legal history of the case.

The record reveals the following events. On March 8, 1971, vehicles driven by Lona Hewitt and Stephen Fuller collided at the intersection of Walker Street and Route 1 in Kittery. As a result of injuries sustained in that accident, Genevieve James, a passenger in the Hewitt vehicle, instituted an action against Fuller in the Superior Court, York County, based on a claim he was negligent.[1] Although he denied any liability for injuries arising out of the accident, Fuller filed a third party complaint against Hewitt, alleging the right to contribution for any damages he might later be required to pay to Mrs. James' estate. Hewitt, thereupon, filed a counterclaim in the third party action, asserting the right to damages for injuries she sustained in the accident. The alignment of the parties in the negligence action was finally completed when Hodgdon was permitted to amend the original complaint to include Hewitt as a party defendant.

At all times pertinent hereto, Fuller maintained a $20,000 liability policy with Royal Indemnity Company (R.I.C.). Although settlement negotiations were undertaken, an agreement apparently could not be reached. R.I.C., thereupon, ostensibly to avoid the possibility of multiple liability, instituted an interpleader action pursuant to Rule 22, M.R.Civ.P. Through such an action, R.I.C. sought to *"facilitate a determination of all liability issues concerning Stephen H. Fuller, Jr.'s responsibility to the adverse claiments [sic], and to also determine which, if any, of these adverse claimants are entitled to damages, and if so, in what amounts and in what order of priority."*

R.I.C. then deposited an amount equal to the policy limit with the Clerk of Courts.

On May 28, 1975, the presiding Justice ordered that Hodgdon and Hewitt file a proof of claim, and that all proceedings in the negligence action be stayed pending the outcome of the interpleader action. In compliance with that order, Hodgdon and Hewitt filed a joint proof of claim stating that they had voluntarily agreed to a division of the $20,000—Hodgdon receiving $12,000 and Hewitt $8,000. At roughly the same time, Hodgdon moved that the stay order prohibiting further prosecution of the negligence action be vacated.

That motion was granted on September 9, 1975.

---

1. Due to the subsequent death of Mrs. James, the administratrix of her estate, Helena Hodgdon, was substituted as party plaintiff.

Just prior to that date, a second Justice, without any prior adjudication of Fuller's liability for damages in the underlying negligence action, ordered that the $20,000 be distributed according to the joint proof of claim. Both Hodgdon and Hewitt accepted the funds. Fuller thereupon filed a motion for summary judgment, Rule 56 M.R.Civ.P., asserting that the voluntary apportionment of the proceeds of the insurance policy estopped Hodgdon and Hewitt from asserting further claims against Fuller, or in the alternative, that they had waived their right to continue to prosecute their claims in the negligence action. That motion was denied. This in turn, prompted Fuller to seek the reinstatement of the original stay order of May 28, and the return of the funds to the court, thereby allowing a complete adjudication of all the issues in the interpleader action. The presiding Justice denied that motion. A pre-trial conference in the negligence action was scheduled. A subsequent motion by Fuller to report the case to the Law Court was denied.

On November 3, 1976, a pre-trial conference was held before a third Superior Court Justice (pre-trial Justice). As a result of that conference, a tentative pre-trial order was issued stating: (1) that the funds already distributed were to be credited against any subsequent judgment, (2) that the only issues left to be litigated were those arising in the negligence action and (3) that a further pre-trial conference was to be held at a later date. All parties subsequently filed further pre-trial memoranda, and a second pre-trial conference was held on December 8, 1976, with the presiding Justice taking the case under advisement.

Following the second pre-trial conference, Hewitt filed a motion for summary judgment, Rule 56, M.R.Civ.P., alleging that

Hodgdon's acceptance of the $12,000 estopped her from claiming additional damages. This assertion, in essence, merely repeated the claim Fuller had previously made in his motion for summary judgment. At roughly the same time, Fuller amended his pre-trial memorandum to state that the only litigable issue was whether the acceptance of the funds by Hodgdon and Hewitt constituted a full and final settlement of the negligence action. Hodgdon claimed this issue had been resolved by the earlier denial of Fuller's motion for summary judgment.

Although it is unclear from the record whether Hewitt's motion was ever specifically ruled upon, the pre-trial Justice issued an order on December 21, 1976,[2] dismissing, with prejudice, all of the then pending complaints, i. e., Hodgdon's complaint against Fuller and Hewitt, Fuller's third party complaint against Hewitt, Hewitt's counterclaim against Fuller, and the interpleader complaint against Hodgdon and Hewitt filed by R.I.C. In an accompanying opinion, the pre-trial Justice explained that his action was taken because he concluded that the fact R.I.C. filed the interpleader action and paid the policy limit into court and the acceptance by Hodgdon of the money paid out by order of the court constituted a settlement as a matter of law. He also cited the fact that Hodgdon had either refused to report the case to the Law Court or to return the funds to the court and have a *"full blown"* trial on the negligence issues.[3]

Unsatisfied with the actions of the pre-trial Justice, Hodgdon filed a motion for relief pursuant to Rules 60(b)(1) and (6), M.R.Civ.P.,[4] asking that the court's order be set aside and that the negligence action be rescheduled for trial. A hearing was subse-

---

**2.** Judgment was subsequently entered on December 22, 1976.

**3.** Hewitt also refused to return the funds to the Court.

**4.** Rule 60 reads in part here relevant:
   *(b) On motion and upon such terms as are just, the court may relieve a party or his legal*

*representative from a final judgment, order, or proceeding for the following reasons:*
*(1) mistake, inadvertence, surprise, or excusable neglect;*

.     .     .     .     .

*(6) any other reason justifying relief from the operation of the judgment.*

quently held on the motion, at which time Hodgdon's attorney sought to present testimony showing that there never had been any intention to settle the negligence action. Claiming that the facts were not in issue and that the question was one of law, the pre-trial Justice refused to admit the proffered evidence and denied the motion. The Justice did, however, repeat his previous offer to report the case to the Law Court or to try it if the parties agreed to return the funds. Both offers were refused.

From both the judgment of December 22, 1976 and the denial of the Rule 60(b) motion, Hodgdon now brings this appeal.[5]

We sustain the appeal.

Hodgdon asserts four distinct errors she says require reversal of the actions taken below. First, that the interpleader was improvidently granted. Second, that the pre-trial Justice erred in ruling on questions of law previously resolved by another Justice of the Superior Court. Third, that the pre-trial Justice erred in ruling that the acceptance of the distributed funds constituted a full and final settlement, and fourth, that the pre-trial Justice erred in refusing to consider evidence, other than the pleadings and docket entries, on the question of intention to settle.

Hodgdon first argues that R.I.C.'s sole interest in instituting the interpleader action was to hinder and delay the trial on the negligence issues, as well as to defeat any possible recovery from Fuller's personal funds. Hodgdon also argues that R.I.C. failed to satisfy all of the preconditions necessary to the invocation of an interpleader action.

We have closely scrutinized the record and find no evidence of any impropriety by R.I.C. We, therefore, limit our inquiry to the question whether the Court below erred in granting the motion to interplead.

Rule 22, M.R.Civ.P., provides that

*[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the . . . plaintiff avers that he is not liable in whole or in part to any or all of the claimants.*

■ The major purpose behind Rule 22 is to allow a party against whom two or more persons are making a claim, "*to bring an action joining as defendants all such claimants for the purpose of adjudicating whether he is liable to anyone, and, if so, to whom and to what extent.*" 1 Field, McKusick and Wroth, *Maine Civil Practice,* § 22.1 (1970).

■ Although there has been some question whether an insurer with a limited contractual obligation can be faced with multiple liability within the meaning of Rule 22, the majority of cases have held that such a requirement is met where the claims, in the aggregate, exceed the limits of the policy in question. *See Pan American Fire and Casualty Co. v. Revere,* 188 F.Supp. 474 (E.D. La.1960). The mere fact that a claim is unliquidated or prospective in nature will not, by itself defeat an otherwise proper motion for interpleader. *Dakota Livestock Co. v. Keim,* 552 F.2d 1302 (8th Cir. 1977); *Underwriters at Lloyd's v. Nichols,* 363 F.2d 357 (8th Cir. 1966); *cf., State Farm Fire and Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

Hodgdon does not disagree with our construction of the basic elements of an interpleader action involving a liability insurer. She argues, rather, that R.I.C. did not claim to be faced with multiple exposure.

We agree.

R.I.C. alleged in its complaint instituting the interpleader that both Hodgdon and Hewitt had made separate settlement demands of $8,000. If so, the aggregate of all the claims against the insurer would total

---

5. Royal Indemnity Company seasonably filed a cross-appeal from the December 22, 1976 judgment dismissing with prejudice the complaint in the interpleader action. R.I.C., however, failed to file a brief within the period prescribed by Rule 75(a), M.R.Civ.P. (since amended), and we, therefore, dismiss that appeal. *See* Rule 75(c), M.R.Civ.P.

only $16,000. This was below the policy limit of $20,000. Although the size of the original demands in both Hodgdon's complaint and Hewitt's third party counterclaim raise some question as to the accuracy of R.I.C.'s assertion, the record reveals no attempt by R.I.C. to amend its complaint. We are, therefore, bound to accept it as written. *See Venable v. Block,* 138 Ga.App. 215, 225 S.E.2d 755 (1976); *Miller et al v. Nicaragua,* 137 Me. 251, 18 A.2d 688 (1941).

▪ Since R.I.C. failed to allege the condition precedent that it be faced with the possibility of multiple liability, we hold that the Justice below erred in granting the motion for interpleader. It necessarily follows that the second Justice also erred in dispersing the funds deposited by R.I.C. However, because Hodgdon and Hewitt accepted the proffered funds, we must extend our inquiry to determine whether that acceptance constituted a full and final settlement, thereby rendering harmless any previous errors.

Following the second pre-trial conference, the presiding Justice found, as a matter of law, that Hodgdon and Hewitt had settled their claims against Fuller. To reach such a conclusion, the Justice must necessarily have found that the only permissible inference to be drawn from the facts and circumstances surrounding the tender and acceptance of the funds was that they were tendered by R.I.C. upon the condition that, if accepted, they would be a full satisfaction of all claims against Fuller, and that Hodgdon and Hewitt were aware of such a condition at the time they received and retained the funds. *Graffam v. Geronda,* Me., 304 A.2d 76 (1973); *Fuller v. Smith,* 107 Me. 161, 77 A. 706 (1910).

Hodgdon has consistently argued throughout the proceedings below and now on appeal that neither of the elements for a settlement as a matter of law, have been met; that is, that R.I.C. never intended that the $20,000 be a complete satisfaction of the claims against Fuller, and that Hodgdon never accepted her share of the funds

as such. Rather, she argues just the contrary; she says that R.I.C. admitted liability when it deposited the funds with the Court and that the then presiding Justice relied on that admission when he entered his withdrawal order. To support her position, Hodgdon cites the fact that Fuller's motion for summary judgment on the waiver and estoppel theories was denied. This, she says, conclusively shows that there was never an intention on the part of any party to resolve the conflict at that point. Fuller, on the other hand, argues that there was never an admission of liability, and therefore, the only possible interpretation of the second Justice's withdrawal order, given Hodgdon and Hewitt's subsequent actions, was that Hodgdon and Hewitt had agreed to accept the $20,000 as a full settlement.

We are at somewhat of a loss to explain the actions of both the Court and the parties below. The interpleader complaint clearly belies any assertion that Fuller or R.I.C. admitted liability.[6] Furthermore, it is obvious that the complaint, even if it had admitted liability, could not have bound Fuller since he was not a party to the interpleader action. The presiding Justice ordered that the funds be withdrawn and dispersed according to the joint proof of claim. Such order was inconsistent with any finding except that of liability. Equally inconsistent, at least on its face, is Hodgdon's and Hewitt's acceptance of the funds without any reservation of further rights or inquiry into the reasons for the Court's order, and their later protestations that no settlement had occurred.

▪ The pre-trial Justice, when faced with these apparently irreconcilable positions, found a settlement as a matter of law.

We cannot agree.

No matter what the actual intention was of either Hodgdon and Hewitt or R.I.C., we cannot say that the *only* permissible inference from the facts was that the parties intended to settle. The pre-trial Justice's

---

6. R.I.C. in its interpleader complaint states in at least four different places, that its duty to pay was contingent on a prior finding of Fuller's liability to either Hodgdon or Hewitt.

order dismissing with prejudice the four related complaints, therefore, cannot stand.

■ We are, however, faced with a situation where a party, having already received funds as a result of a court order, subsequently seeks to set aside that order as being erroneous. Although this Court has yet to address the precise issue presented here, other jurisdictions have held that a party seeking to avoid a *settlement* must first tender back any amount previously paid, thereby returning both parties to the status quo. *See, Chapman v. Ross,* 47 Mich. App. 201, 209 N.W.2d 288 (1973). Even though we hold that the parties' action did not constitute a settlement, we consider that the same rule should apply to the facts in this case. Equitable considerations require that the parties be returned to the status each held prior to the time the funds were ordered disbursed. The equities require that Hodgdon return the $12,000 previously distributed to her before any trial can be had on the merits of her negligence action.[7]

7. Because Mrs. Hewitt has never appealed and R.I.C. failed to prosecute its cross-appeal, Mrs.

In light of our finding that the respective Justices below erred in granting the motion for interpleader and in finding a full and final settlement, we need not reach appellant's further allegations of error.

The entry must be:

Cross-appeal dismissed.

Appeal sustained.

Judgment vacated. Case remanded to the Superior Court for trial on the issues presented in the negligence actions, provided, however, that appellant first returns to the Court those funds previously distributed to her under the withdrawal order of August 18, 1975.

DELAHANTY, J., did not sit.

Hewitt can no longer be considered party to the proceeding.